_Verified Correct Copy of Original 6/29/2023._

Nabil Khlafa
5331 S Macadam Ave
Suite 258-107
Portland, OR 97239 nabilnoble77@gmail.com
971-337-8987

THE CIRCUIT OF THE STATE OF OREGON FOR THE COUNTY OF MULTNOMAH
CIVIL

23CV26019

Case No:
COMPLAINT
$ 7,500,000.00

Nabil Khlafa
Plaintiff

v.

Oregon Health and Science University
Danny Jacobs
Darryl Walker
Cathryn Dammel
Ilona Cox
Sallyday Eisele
Defendants

FILED
2023 JUN 29 AM 9:45
CIRCUIT COURT
FOR MULTNOMAH COUNTY

June 29, 2023

My name is Nabil Khlafa, I am a former Oregon Health and Science University employee.

Exhibit 2 - Page 1 of 12

_Verified Correct Copy of Original 6/29/2023._

I was abused by Oregon Health and Science University, and I experienced workplace discrimination, retaliation and unlawful termination by this organization that is a recipient of public funds, and federal and state resources.

Location of Events:

Oregon Health and Science University, Health Information Service Department, 3181 SW Sam Jackson Park Rd, Portland, OR 97239.

Time, Place and Circumstances Giving Rise to my complaint:

1. I am a 56 year old Arab male originally from Morocco, of Islamic faith and heritage. I suffer from a disability.

2. I was employed by Oregon Health and Science University as a Health Information Specialist, an entry level position, for more than 15 years. OHSU ignored and dismissed, knowingly and intentionally, all my professional and academic abilities throughout the entire duration of my employment.

3. OHSU discriminated against me, pervasively, in the scope of my employment, on the basis of my race, national origin, engagement in protected activities, disability and age.

4. OHSU discriminated against me on the basis of my religion. The Health Information Management Department, an OHSU department I worked in for more than 15 years, systematically discriminated against me on the basis of my religion. I also witnessed this department management abusing other Moslem employees.
I believe our faith and our religious identity and background played a substantial part in how we were treated as employees, and as human beings, by this organization, without the managers and the directors involved in these discriminatory practices facing any consequences or any accountability by the leadership of OHSU.

5. Over the years of my employment at OHSU, I applied, internally, for a very significant number of positions that I had been professionally and academically qualified for, and I was pervasively denied employment growth and any opportunity for a career advancement.

6. On October 7, 2020, I filed a complaint with the U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR), that Oregon Health & Science University Hospital (OHSU), the covered entity, had violated the Federal Standards for Privacy of Individually Identifiable Health Information and/or the Security Standards for the Protection of Electronic Protected Health Information (45 C.F.R. Parts 160 and 164, Subparts A, C, and E, the

Exhibit 2 - Page 2 of 12

_Verified Correct Copy of Original 6/29/2023._

Privacy and Security Rules). This allegation could also reflected a violation of 45 C.F.R. § 164.530(c).

7. On May 20, 2021, I reported the second HIPAA violations, and abuse of OHSU patients' protected health information to the U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR).

8. Between June and November 2021, OHSU legal department, OHSU Human Resources department, the Health Information Management Department, OHSU legal counsel, Darryl Walker, Human Resources partner, Ilona Cox, and manager, Sallyday Eisele, collaborated, constructed and were involved in a sham and a retaliatory investigation, racially profiling me, to target me, based on assumptions about characteristics of my racial, ethnic and religious group, rather than my actual behavior, in a discriminatory and retaliatory act.

9. Oregon Health and Science University lied to a federal investigation about the HIPAA violations and about my character and conduct, and accused me of inappropriately raising my voice at a white female manager, Sallyday Eisele, the same individual involved in the reported HIPAA violations, playing on racist stereotypes associated with a prejudiced supposition that colored men are more violent than white men, and with innate misconduct-prone.

10. Oregon Health and Science University, exploitatively, used my disability and my serious health condition as a factor of benefit, against me, through a well planned retaliatory endeavor, structured to support laborious and pervasive efforts by this university to retaliate against me, and to terminate my employment after I had contacted The U.S. Department of Health and Human Services, (OCR).

11. On 3/14/2022 I submitted a tort claim notice to OHSU stating facts and events that gave rise to discriminatory and unlawful employment practices under Title VII of the Civil Rights Act of 1964 and ORS 659A.030(1), on the basis of race and national origin, assertion of violations of my constitutional and civil rights, pursuant to 42 U.S.C. § 1983, age discrimination in violation of the age Discrimination in Employment Act (ADEA), and disability discrimination, in violation of the Americans with Disabilities Act (ADA) and ORS 659A.112., retaliation under Title VII, ORS 659A.030(1)(f), ORS 659A.109, as well as ORS 659A.203(1), asserting claims of discrimination and retaliation under the federal Family Medical Leave Act (FMLA) and ORS 659A.183.

12. On September 22, 2022, Danny Jacobs, President of Oregon Health & Science University, was informed that on September 7, 2022, the Office of Federal Contract Compliance Programs (OFCCP) had received my complaint alleging violations of Executive Order 11246, as amended (EO 11246), and Section 503 of the Rehabilitation Act of 1973, as amended (Section 503) And

Exhibit 2 - Page 3 of 12

_Verified Correct Copy of Original 6/29/2023._

that the complaint, in its entirety, had been transferred to the EEOC for investigation, and that the OFCCP regulations required that OHSU retained all records pertinent to that complaint and ensured that there was no retaliation because of that complaint.

13. My employment at Oregon Health and Science University was terminated following a worker's compensation hearing that was scheduled for 11/7/2022 to be presided by the administrative law judge, Geoffrey Wren.
This event was attended by:
- Nabil Khlafa, the claimant, myself.
- Rachel Schwartz-Gilbert, the attorney for SAIF Corporation, the carrier of the OHSU worker's compensation plan.
- Darryl Walker, the legal counsel of Oregon Health and Science University.
- Martie L McQuain, my worker compensation attorney.
- Russell Gomm, my employment attorney.
The administrative law judge, Geoffrey Wren, stated at the opening that they had not had access to the notes of the case due to computer issues.

14. OHSU, and their worker's compensation carrier, SAIF Corporation, made the termination of my employment to be a condition of the worker's compensation claim settlement.

15. The administrative law judge, Geoffrey Wren, who was simultaneously acting as a mediator in my employment separation case, communicated to me, in the presence of the two attorneys, Martie L McQuain, and Russell Gomm, that Oregon Health & Science University had the intent to, and would continue to keep me at an entry level position for the remaining years of my employment, and that OHSU would find a way to terminate my employment anyway if I didn't accept OHSU separation settlement and resigned.

16. Oregon Health and Science University, openly, casually and explicitly, threatened me with continuous employment discrimination for the remaining years of my employment, and with imminent termination if I refused to resign.

17. After OHSU's threats I did not feel safe going back to work at OHSU, and on 11/15/2022 I was compelled to sign a separation agreement and a waiver of rights when I was on a protected medical leave and unable to make sound and informed decisions, free from errors.

18. Oregon Health and Science University's will and act to coerce me to waive Non-waivable rights is interference with protected activities and is retaliatory and goes against basic tenets of the employment law. The waiver of rights and claims that Oregon Health and Science University coerced me to sign, and that cut off my access to civil rights protections, is unconstitutional, and

Exhibit 2 - Page 4 of 12

_Verified Correct Copy of Original 6/29/2023._

against public policy and is a violation of my whistleblowers' rights, and is a violation of my Human Rights.

19. On 11/16/2022 when I was on a protected medical leave to take care of my own serious health condition, and after 15 years of employment, Oregon Health and Science University, terminated my employment, unlawfully, for speaking up against a structured culture of racism, discrimination, ostracism and exclusion in this medical and educational institution, and for filing a Worker's Compensation claim and for contacting the U.S. Department of Health and Human Services to report abuse of thousands of patients' protected health information.

20. Oregon Health and Science University abused and violated my rights under The Age Discrimination in Employment Act of 1967 and The Older Workers Benefit Protection Act (OWBPA).

21. On 11/30/2022 OHSU terminated my health insurance coverage and my family's and exposed me and my family to more serious health and medical risks and vulnerabilities.

22. On 12/8/2022 OHSU deactivated my bus pass that I had already paid for, without refunding my payment, even after their legal counsel, Darryl Walker, had said, initially and deceptively, I would keep the bus pass.

23. On 12/22/2022 Oregon Health and Science University's legal counsel, Darryl Walker, tried to intimidate me to not contact the EEOC, and tried to interfere with my right to file charge of discrimination, retaliation, unlawful termination against OHSU, thus interfering with the EEOC's mission as well.

24. The waiver OHSU coerced me to sign to release this employer from liability for any past claim under The Age Discrimination in Employment Act of 1967 and The Older Workers Benefit Protection Act (OWBPA) was signed under threats and coercion.

25. The waiver signed to release Oregon Health and Science University from liability for any past claim under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), was signed under threats and coercion.

26. This coerced waiver is not in compliance with state and federal statutes regulating limitations on an employer's ability to obtain an enforceable waiver of employment law claims and it does not meet the standards that must be met under the major federal employment statutes, as well as those under Oregon state employment laws, to be a valid waiver and release of claims without litigation.

Exhibit 2 - Page 5 of 12

_Verified Correct Copy of Original 6/29/2023._

27. This waiver OHSU coerced me to sign was not voluntary, and it was not knowing; (1) I was not given sufficient time to consider my options, (2) OHSU did not provide me with complete and accurate information concerning what benefits are available under their severance package, and (3) OHSU threatened and intimidated me into accepting their agreement in violations of 29 U.S.C. § 623(f)(2)(B).

28. The Age Discrimination in Employment Act (ADEA) and the The Older Workers Benefit Protection Act (OWBPA) outlines with specificity the conditions for a waiver of ADEA rights and the manner in which the waiver process should proceed. The OWBPA requires that the waiver must be knowing and voluntary. 29 U.S.C. § 626(f).
The waiver Oregon Health and Science University coerced me to sign on 11/15/2022 was not knowing and it was not voluntary, and it does not meet this standard and the conditions that must be met for the waiver to be valid:
It was written so that I, an employee on a medical leave and under overburdened stress from OHSU threats, could not understand. The waiver forced me to waive prospective rights. The OWBPA's knowing and voluntary standard also requires an employee to be given the option to revoke the agreement within seven days after the execution of the waiver. OHSU denied me this right that is protected by the OWBPA.
The knowing and voluntary standard for the waiver of an ADEA claim varies, depending on the number of employees that the employer is discharging. As a singled out and targeted employee, I was never given a period of at least 21 days to consider the agreement. Federal regulations explicitly state that if an employer is offering an employee a severance package, such a plan must be voluntary. The waiver and release OHSU coerced to sign was unlawful, abusive and discriminatory:
(1) I was given no time to consider my options.
(2) OHSU provided me with false and inaccurate information concerning what benefits and rights are available to me under their severance package
(3) OHSU threatened and intimidated me into accepting their agreement, a violation of the 29 U.S.C. § 623(f)(2)(B).

29. Title VII, ADA, EPA and Section 1981:
When an employee may waive or release an employer from liability for any past claim under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), and 42 U.S.C. § 1981 ("Section 1981"), the waiver OHSU coerced me to sign off my Title VII rights was not knowing and it was not voluntary. It fails the tests of consideration such as:
1) My health condition when signing the waiver;
2) I had no inputs in negotiating the terms of the settlement;
3) The clarity of the agreement;
4) The amount of time I had for deliberation before signing the release;

Exhibit 2 - Page 6 of 12

(5) My release was induced by improper conduct on Oregon Health and Science University's part.

30. The waiver OHSU coerced me to sign has violated my rights under the Oregon Workplace Fairness Act (OWFA) by denying me the right to be reconsidered for employment at OHSU.

31. Violations of federal civil rights statutes, Title 18 U.S.C. § 241 Conspiracy Against Rights: two or more individuals from OHSU leadership and management agreed to threaten, and to intimidate me in the free exercise of my rights and privilege secured by the Constitution or the laws of the United States of America and because of me having exercised such a right.

32. On 2/27/2023 I submitted a Tort Claim Notice to OHSU, and I requested them to take immediate steps to preserve all documents pertaining to my employment, including recordings, investigative documents, evidence, email communications, texts, management notes and supervisory files, and to suspend any purge cycles of documents pertaining to my employment at OHSU.

**Claims and Damages Sought:**

These facts and events give rise to discriminatory and unlawful employment practices under Title VII of the Civil Rights Act of 1964 and ORS 659A.030(1), on the basis of race, national origin, religion and age. I am asserting violations of my constitutional and civil rights, pursuant to 42 U.S.C. § 1983.

These facts further give rise to age discrimination, in violation of the age Discrimination in Employment Act (ADEA), and constitute disability discrimination, in violation of the Americans with Disabilities Act (ADA) and ORS 659A.112.

These facts and events give rise to retaliation under Title VII, ORS 659A.030(1)(f), ORS 659A.109, as well as ORS 659A.203(1). I am also asserting claims of discrimination and retaliation under the federal Family Medical Leave Act (FMLA) and ORS 659A.183.

These facts, also, give rise to Violations of federal civil rights statutes, Title 18 U.S.C. § 241 Conspiracy Against Rights:

In litigation, I am seeking economic damages and non-economic damages for emotional and mental abuse, emotional distress, pain and suffering, loss of self-esteem and reputation, as a result of the above violations of the law, in the amount of $ 7,500,000.00 (Seven Million Five Hundred Thousand Dollars).

Exhibit 2 - Page 7 of 12

_Verified Correct Copy of Original 6/29/2023._

_Verified Correct Copy of Original 6/29/2023._

I am also seeking injunctive relief to prevent OHSU's further violations of law.

Sincerely,

Nabil Khlafa

Exhibit 2 - Page 8 of 12



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Seattle Field Office
909 First Avenue, Suite 400
Seattle, WA 98104
(206) 576-3000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 04/03/2023

**To:** Mr. Nabil Khlafa
5331 S Macadam Ave Suite 258-107
PORTLAND, OR 97239
Charge No: 551-2023-01458

EEOC Representative and email:     Gustavo Irizarry
Enforcement Supervisor
gustavo.irizarry@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 551-2023-01458.

On Behalf of the Commission:

April 3, 2023                    _____ for
Date                             Elizabeth M. Cannon, Director
                                 Seattle Field Office

Cc:
Legal EEO
legal@ohsu.edu

AAEO
aaeo@ohsu.edu

Please retain this notice for your records.

Exhibit 2 - Page 9 of 12

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 551-2023-01458 to the District Director at Nancy Sienko, 450 Golden Gate Avenue 5 West PO Box 36025, San Francisco, CA 94102.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to:
https://www.eeoc.gov/eeoc/foia/index.cfm.

**Exhibit 2 - Page 10 of 12**

Enclosure with EEOC Notice of Closure and Rights (01/22)

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

#### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- ✓ **Only one** major life activity need be substantially limited.

- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

_Verified Correct Copy of Original 6/29/2023._

Exhibit 2 - Page 11 of 12

Enclosure with EEOC Notice of Closure and Rights (01/22)

### "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at* http://www.eeoc.gov/laws/types/disability_regulations.cfm.

Exhibit 2 - Page 12 of 12