# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NABIL KHLAFA**, | Case No. 3:23-cv-1013-SI |
| Plaintiff, | **ORDER PARTIALLY GRANTING SUMMARY JUDGMENT, AND ORDER FOR PLAINTIFF TO SHOW CAUSE** |
| v. | |
| **OREGON HEALTH AND SCIENCE UNIVERSITY, DANNY JACOBS, DARRYL WALKER, CATHRYN DAMMEL, ILONA COX, and SALLYDAY EISELE**, | |
| Defendants. | |

Nabil Khlafa, Plaintiff, *pro se*.

Karen M. O'Kasey, HART WAGNER, LLP, 1000 SW Broadway, Suite 2000, Portland, OR 97205. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Nabil Khlafa brings this case against his former employer, Oregon Health and Science University (OHSU), and five OHSU employees (collectively, Defendants). Plaintiff asserts numerous claims under state and federal law, including for age, race, and disability discrimination, and retaliation.[1] Before the Court is, among other things, Defendants' Motion for

---

[1] Plaintiff brings the following claims: (1) discriminatory and unlawful employment practices under Title VII of the Civil Rights Act of 1964, and Oregon Revised Statutes (ORS) § 659A.030(1); (2) age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA); (3) disability discrimination under the Americans with Disabilities Act (ADA) and ORS § 659A.112; (4) retaliation under Title VII, ORS § 659A.030(1)(f), ORS § 659A.109, and

PAGE 1 – ORDER

Summary Judgment (ECF 8). Plaintiff filed a Surreply (ECF 18) to that motion, which

Defendants move to strike (ECF 20). Because Plaintiff is *pro se*, the Court construes his Surreply

as a motion for leave to file, grants the motion, and considers the arguments therein in ruling on

Defendants' Motion for Summary Judgment.[2]

Several other motions also are pending in this case, including Plaintiff's Motion to

Compel Disclosure (ECF 12), and Plaintiff's Motion for Sanctions (ECF 24). After Defendants

filed their Response to Plaintiff's Motion for Sanctions, Plaintiff filed an Unopposed Motion for

Extension of Time to File a Reply, in response to which the Court granted the extension of time,

but in which Plaintiff also moves for sanctions on additional grounds. *See* ECF 26 at 3-5. The

Court construes Plaintiff's request for sanctions in his Motion for Extension of Time as a second

motion for sanctions.[3]

---

ORS § 659A.203(1); (5) discrimination and retaliation under the Oregon Family and Medical
Leave Act, ORS § 659A.183; and (6) a claim under 18 U.S.C § 241 for Conspiracy Against
Rights. ECF 1-2 (Complaint).

[2] The Local Rules do not provide for the filing of surreplies on a motion for summary
judgment, with a narrow exception not relevant here. *See* LR 56-1(b) (providing that a surreply is
permitted to address an evidentiary objection raised by the moving party in its reply). In addition,
Plaintiff filed a "response" to a declaration attached to Defendants' Response to Plaintiff's
Motion to Compel (*see* ECF 14 (Walker Decl.), ECF 19 (Plaintiff's Response)), and a reply in
support of his motion to compel, *see* ECF 17. Neither the Federal Rules of Civil Procedure nor
the Local Rules permit briefs to be filed in response to declarations, nor is a reply permitted in
connection with a discovery motion under Local Rule 26-3 unless otherwise directed by the
Court. According to Defendants, Plaintiff also failed to confer with counsel before filing any of
these motions. Going forward, the Court expects all parties to comply with the Federal Rules of
Civil Procedure and the Local Rules, including conferral requirements.

[3] After Plaintiff filed his Unopposed Motion for Extension of Time and the Court granted
the requested extension, Defendants filed a Response (ECF 28) addressing the new request for
sanctions, and Plaintiff filed a Reply (ECF 30).

For the reasons explained below, the Court grants in part Defendants' Motion for Summary Judgment, denies Plaintiff's motions for sanctions, issues an order for Plaintiff to show cause, and denies as moot all other pending motions.

## STANDARDS

**A.  Motion for Summary Judgment, Fed. R. Civ. P. 56(a)**

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted).

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The Ninth Circuit further instructs, however, that "an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

**B.  Motion for Sanctions, Fed. R. Civ. P. 11**

Rule 11 of the Federal Rules of Civil Procedure provides in part that an attorney, by submitting any paper to the court, "certifies to the best of the [attorney's] knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions [therein] have evidentiary support." Fed. R. Civ. P. 11(b). "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (quotation marks omitted). If the court finds a violation of Rule 11(b), "the court may impose an appropriate sanction on any attorney . . . that violated the rule." Fed. R. Civ. P. 11(c). The "central purpose of Rule 11 is to deter baseless filings in district court." *Cooter*, 496 U.S. at 393. The Ninth Circuit has cautioned that sanctions under Rule 11 are reserved for "the rare and exceptional case." *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988); *see also Conn v. Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992) (noting that Rule 11 is an "extraordinary remedy, one to be exercised with extreme caution").

## BACKGROUND

Plaintiff describes himself as a 56-year-old Arab man originally from Morocco, of Islamic faith and heritage. Plaintiff worked in OHSU's Health Information Management Department as a Health Information Specialist, an entry-level position, for more than 15 years. On November 15, 2022 Plaintiff signed a Separation Agreement (or Agreement), which provided that his employment with OHSU would end the following day. *See* ECF 9-1 (Agreement) ¶ 1. In consideration for signing the Agreement, Plaintiff received a settlement payment of $200,000, of which $150,000 was payable to Plaintiff, and $50,000 was payable to Plaintiff's attorney. *See id.* ¶ 2. The Agreement included a broad "Mutual Release of All Claims" (Waiver), which provides:

In consideration for the Settlement Payment and the parties' other promises made herein, Employee on the one hand, and OHSU, including its subsidiaries, affiliates and related entities including but not limited to OHSU's current and former board members, medical staffs, employees, agents, attorneys, assigns, insurers, and reinsurers, any and all employee benefit plans sponsored or funded by OHSU and any and all OHSU past or present subsidiaries, affiliates and related entities (collectively, "OHSU Released Parties") on the other hand, release each other from any and all claims they may have against the other, arising up to and including the date of execution of this Agreement whether those claims are past or present; known or unknown; suspected or unsuspected; and/or asserted or unasserted, including but not limited to all claims:

a.  under state and federal legislation including ORS Chapters 441, 652, 653, 654, 657, 659, and 659A et seq.; Title VII of the Civil Rights Act; the Post Civil War Civil Rights Act; the Civil Rights Act of 1991; the Fair Labor Standards Act; the Equal Pay Act; the Family and Medical Leave Act; the Americans with Disabilities Act; the Rehabilitation Act; the Age Discrimination in Employment Act; the Older Workers Benefit Protection Act; the Employee Retirement Income Security Act; Occupational Safety and Health Act; the Sarbanes-Oxley Act; state and federal racketeering acts; Executive Order 11246; and all federal and state civil rights statutes or ordinances (including Sections 1983 and 1981) as well as any and all other federal, state or local statutes, ordinances, regulations, constitutions or executive orders; and

b.  under any employment contract (whether collective or individual, express or implied, oral or written) or any implied covenant of good faith and fair dealing, which might otherwise have governed the employment relationship previously existing between the parties; and

c.  under the common law, including but not limited to claims for wrongful discharge, intentional and reckless infliction of emotional distress, interference with contractual or business relationships and defamation regardless of whether such claims arose or may have arisen individually, through a governmental agency, class of employees or union representatives; and

d.  for fraud in the inducement of this Agreement as well as any other claim that Employee might assert to rescind this Agreement.

*Id.* ¶ 8.

**DISCUSSION**

**A. Motion for Summary Judgment[4]**

Defendants argue that they are entitled to summary judgment because the Waiver bars all of Plaintiff's claims. The parties do not appear to dispute the plain meaning of the Waiver, which provides that Plaintiff will release "any and all claims" that he may have had against OHSU, "arising up to and including the date of execution of th[e] Agreement, whether those claims are past or present; known or unknown; suspected or unsuspected; and/or asserted or unasserted," which include any claim "for fraud in the inducement of this Agreement as well as any other claim that the Employee might assert to rescind th[e] Agreement."

Plaintiff argues, however, that the Waiver is "legally invalid" and is unenforceable because he did not enter into the Agreement knowingly and voluntarily. Plaintiff asserts that the Waiver "was written so that [Plaintiff], an employee on a medical leave and under overburdened stress from OHSU['s] threats, could not understand" and that the Agreement was induced through duress, undue influence, and deceit.

---

[4] The Court notes that statements in legal briefs or in an unverified complaint are not evidence properly considered on a motion for summary judgment. *See* Fed. R. Civ. P. 56(c); *Olivier v. Baca*, 913 F.3d 852, 861 (9th Cir. 2019) (stating that "legal memoranda are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment" (cleaned up)); *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (stating that the nonmoving party "cannot defeat summary judgment with allegations in the complaint"). As noted, Plaintiff must comply with the summary judgment rules. *Thomas*, 611 F.3d at 1150; *see also* MELISSA AUBIN, HANDBOOK FOR SELF-REPRESENTED PARTIES, UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON 32-33 (2023 ed.), *available at* https://www.ord.uscourts.gov/phocadownload/userupload/prose/Handbook%20for%20Self-Represented%20Parties.pdf (discussing evidence the Court will consider at summary judgment). Thus, the Court does not consider Plaintiff's statements in his response briefs nor his allegations in his complaint as evidentiary facts, rather than argument, in ruling on Defendants' Motion for Summary Judgment.

**1.  Plaintiff's ADEA Claim**

  **a.  Older Workers Benefit Protection Act**

In 1990, Congress amended the ADEA by enacting the Older Workers Benefit Protection Act (OWBPA), which clarified the ADEA's prohibitions against age-based discrimination. Title II of the OWBPA, codified at 29 U.S.C. § 626(f), provides that "[a]n individual may not waive any right or claim under [the ADEA] unless the waiver is knowing and voluntary," and establishes specific, minimum requirements for a "knowing and voluntary" release of any ADEA claim. In addition to § 626(f)(1), which requires, as a general matter, that the waiver be "knowing and voluntary," subparagraphs (A) through (H) set forth more specific "minimum" prerequisites necessary to satisfy that requirement. Section 626(f)(1)(F) provides that an employee over 40 years old who waives an ADEA claim must be "given a period of at least 21 days within which to consider the agreement." And § 626(f)(1)(G) requires that the agreement "provide[] that for a period of at least 7 days following the execution of [the] agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired."

  A waiver (or "release") that does not comply with the OWBPA's safeguards is unenforceable—but only for claims brought under the ADEA. *See Oubre v. Entergy Operations, Inc.*, 522 U.S. 422, 427-28 (1998) ("Since Oubre's release did not comply with the OWBPA's stringent safeguards, it is unenforceable against her *insofar as it purports to waive or release her ADEA claim*. As a statutory matter, the release cannot bar [the plaintiff's] ADEA suit, *irrespective of the validity of the contract as to other claims*." (emphases added)); *see also* 29 U.S.C. § 626(f)(1) (providing that "[a]n individual may not waive any right or claim *under [the ADEA]* unless the waiver is knowing and voluntary" (emphasis added)).

### b.  Application

Plaintiff argues that the Agreement does not satisfy the minimum specified requirements of § 626(f), because: (1) he was not given seven days after execution of the agreement to revoke it, and (2) he was not given at least 21 days to consider the agreement. Defendants concede that the Agreement does not include the requisite seven-day revocation period and that "a release under the OWBPA requires specific language" to be valid. ECF 16 at 5 (citing *Oubre*).[5] The Court agrees with Plaintiff that the Waiver does not satisfy the minimum requirements for a waiver to be "knowing and voluntary" within the meaning of the OWBPA. Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Plaintiff's ADEA claim.

### 2.  Non-ADEA Claims

In his summary judgment briefing, Plaintiff states that Defendants "compelled [him] to resign" and to sign the Agreement and that "[t]he separation agreement [OHSU] coerced [Plaintiff] to sign was unknowing and unvoluntary." In support of those and similar assertions, Plaintiff attaches a declaration[6] to his response, stating: "I did not enter [the Agreement]

---

[5] Defendants also concede that the agreement "did not provide a 21-day waiting period." It is not clear, however, whether Defendants mean that the Agreement, as written, did not *expressly* provide for the 21-day waiting period, or whether Plaintiff was not otherwise "given" a period of at least 21 days to consider the agreement, as required under the OWBPA. Whereas § 626(f)(1)(G) expressly requires that the relevant agreement itself provide for the seven-day revocation period, § 626(f)(1)(F) requires only that the employee be "given" a period of at least 21 days to consider the agreement. In any event, the Separation Agreement falls short of the OWBPA's requirements at *least* because it does not expressly provide for the seven-day revocation period.

[6] As Defendants point out, Plaintiff failed to introduce this evidence in the correct form because he did not make his statements under penalty of perjury. Plaintiff did, however, declare the statements were true and correct. ECF 11 at 2. Because Plaintiff is *pro se*, the Court considers the statements in Plaintiff's declaration. Going forward, Plaintiff must ensure his filings and evidence comply with applicable legal rules and requirements, including 28 U.S.C. § 1746, which requires that declarations be submitted under penalty of perjury.

voluntarily and knowingly"; and "[the Agreement] was induced through threats, duress,

intimidation, undue influence[,] and deceit." ECF 11 ¶¶ 2-3. Plaintiff also asserts that he was

"unable to make sound and informed decisions" at the time he signed the agreement. He attaches

to his surreply a copy of a letter from Standard Insurance Company dated November 10, 2022,

which states that Plaintiff is eligible for Oregon Family leave based on a leave request Plaintiff

submitted that same day. ECF 18 at 8-11.

      Plaintiff has not provided specific facts that would enable him to avoid the plain terms of

the Waiver as it applies to any claim other than his ADEA claim.[7] In opposing a motion for

summary judgment, a plaintiff may not simply rely on the allegations in his complaint, but must

set out "*specific facts*" in evidence properly considered on a motion for summary judgment,

showing that there is a genuine issue of material fact for trial. *T.W. Elec. Svc., Inc. v. Pac. Elec.*

---

[7] Plaintiff has provided no authority to support the proposition that a release that does not fulfill the minimum requirements of the OWBPA is *per se* invalid as to any *non*-ADEA claim. As discussed above, the Supreme Court appears to have reached the opposite conclusion. *See Oubre*, 522 U.S. at 427-28.

    Plaintiff also argues that a separate waiver in paragraph 4 of the Agreement violates the Oregon Workplace Fairness Act (OWFA). That paragraph provides that Plaintiff "agrees not to seek or accept reemployment at OHSU or to accept assignment with OHSU as an Independent Contractor or Consultant or through any contract or temporary agency" and that if Plaintiff does seek such reemployment or assignment in the future, he "waives the right to sue under any applicable law if [he] is denied employment, his employment is terminated, or because of mistaken hiring by OHSU." Defendants do not respond to Plaintiff's argument that the waiver violates OWFA, which generally prohibits including in any employment separation agreement "[a] rehire provision that prohibits the employee from seeking reemployment with the employer as a term or condition of the agreement." ORS § 659A.370(2). Plaintiff, however, has not sued under the Oregon law that provides a direct cause of action against employers who violate that provision. *See* ORS § 659A.885 (providing a cause of action for "[a]ny person claiming to be aggrieved by an unlawful practice" that violates ORS § 659A.370). Further, whether the waiver in paragraph 4 is valid and enforceable against Plaintiff is irrelevant to Plaintiff's sole remaining potential claim under the ADEA: Plaintiff seeks only money damages and unspecified "injunctive relief to prevent OHSU's further violations of the law," and nowhere in Plaintiff's Complaint does he allege that he seeks future employment or assignment with OHSU.

*Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting with emphasis Fed. R. Civ. P. 56).

The statements in Plaintiff's declaration are legal conclusions or, to the extent they assert facts,

are conclusory. Such statements, even when included in an admissible form, are insufficient to

defeat a motion for summary judgment. *See, e.g.*, *Hernandez*, 343 F.3d at 1112 (stating that the

nonmoving party "cannot defeat summary judgment . . . with unsupported conjecture or

conclusory statements"); *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1061 (9th Cir. 1989)

("Because the affidavit contains only conclusory allegations, not backed up by statements of fact,

it cannot defeat a motion for summary judgment."); *Lew v. Kona Hosp.*, 754 F.2d 1420, 1424

(9th Cir. 1985) (finding declaration provided in opposition to a motion for summary judgment

deficient to the extent it stated legal conclusions rather than facts); *Cherewick v. State Farm Fire*

*& Cas.*, 578 F. Supp. 3d 1136, 1156 (S.D. Cal. 2022) ("[D]eclarations based on . . . legal

conclusions, or argumentative statements, are not *facts* and . . . will not be considered on a

motion for summary judgment." (emphasis in original)).[8]

The Court also finds that the Standard Insurance Letter does not establish that Plaintiff

was "unable to make sound and informed decisions" at the time he signed the Agreement. That

letter states only that Plaintiff is *eligible* for Oregon Family leave, and clarifies that his "leave

request and Disability claim are not yet approved." The letter asks that Plaintiff include an

"Attending Physician's Statement" that will be used "to evaluate [Plaintiff's] leave and

Disability claim." The Standard Insurance Letter shows only that Plaintiff sought medical leave

---

[8] In his briefing, Plaintiff makes similar statements consisting of broad, conclusory factual assertions and legal conclusions. *See, e.g.*, ECF 10 at 4 ("The defendants compelled me to resign and sign an illegal waiver of rights . . . ."); *id.* at 5 (stating that Defendants "bulldozed" Plaintiff into signing the waiver); *id.* at 7 (referring to "overwhelming evidence of undue influence"); *id.* at 8 ("OHSU threatened and intimidated me into accepting their agreement[.]"); *id.* at 9 ("The separation agreement [OHSU] coerced me to sign was unknowing and involuntary . . . .").

and filed a disability claim, for reasons left unspecified; it does not indicate that Plaintiff was unable to make sound and informed decisions at the time he signed the Agreement.

Plaintiff, represented at the time by an employment attorney,[9] signed the Separation Agreement. The terms of the Waiver are clear and unambiguous. Plaintiff does not argue that he sought to repudiate the Agreement at any point before he filed this lawsuit (seven and a half months after signing it), or was incapable of doing so until that point. *Cf. Schoenwald v. Arco Alaska, Inc.*, 191 F.3d 461, 1999 WL 685954, at *1-2 (9th Cir. 1999) (mem.) (finding that the plaintiff had ratified a release agreement by consulting counsel before depositing payment, accepting the contract benefits, and waiting fifteen months before filing suit). Plaintiff states that he signed the Agreement under duress and coercion, but he has provided no specific facts showing that he could not have availed himself of a straightforward alternative, *e.g.*, simply declining to sign the Agreement, rejecting the $200,000 settlement payment, and instead filing suit. Viewing the facts in a light most favorable to Plaintiff and giving him the benefit of all reasonable inferences, Plaintiff has failed to provide sufficient evidence to defeat summary judgment on his non-ADEA claims.

---

[9] Plaintiff also alleges several facts in his briefing about the inadequacy of the legal advice he received before he signed the Separation Agreement. Those allegations, which are neither included in Plaintiff's Complaint nor presented in an admissible form, are not properly considered on Defendants' Motion for Summary Judgment. Further, to the extent that Plaintiff is unhappy with the legal advice he received, his recourse is not a lawsuit against the parties with whom he settled.

**B.  Motions for Sanctions[10]**

**1.  First Motion for Sanctions**

Plaintiff asks the Court to sanction OHSU's legal counsel (and named Defendant) Darryl Walker "for committing perjury [by] lying about the relationship with attorney Cathryn Dammel." Plaintiff's motion arises from purportedly conflicting statements that Mr. Walker made about an outside investigator who worked for OHSU and participated in an investigation that involved Plaintiff.

During Plaintiff's employment, OHSU hired Cathryn Dammel, an attorney licensed in Washington State. According to Mr. Walker, Ms. Dammel was hired to investigate (and did investigate) complaints made against Plaintiff. *See* ECF 14 (Walker Sept. 2023 Decl.) ¶ 2; ECF 24 (Walker Jan. 2022 Decl.) ¶ 4. Plaintiff asserts (without citation to any admissible evidence) that the investigation was based on "sham and fabricated workplace code of conduct violation." Plaintiff, however, does not dispute that OHSU hired Ms. Dammel and that she interviewed Plaintiff. Defendants assert attorney-client privilege over the communications between Mr. Walker and Ms. Dammel. In a declaration submitted in support of Defendants' Response to Plaintiff's Motion to Compel, Mr. Walker states: "Throughout Mr. Khlafa's employment, I have had discussions with Ms. Dammel . . . related to [P]laintiff that were for the purposes of legal advice."

---

[10] Unless otherwise stated, the facts related to Plaintiff's motions for sanctions are undisputed.

Plaintiff asserts that the above statement conflicts with a declaration that Mr. Walker submitted in January 2022 to the Client Assistance Office of the Oregon State Bar (OSB).[11] The January 2022 declaration includes the following statement:

> OHSU hired the outside investigator, Cathryn Dammel, effective June 9, 2021. Ms. Dammel is an attorney (licensed in Washington State) with a background in employment and labor law. However, her work for OHSU was limited to conducting a factual investigation. I did not ask her to, and she did not, render legal advice with respect to this or any other matter for OHSU.

Walker Jan. 2022 Decl. ¶ 4. Plaintiff argues that Mr. Walker's statement that he had discussions with Ms. Dammel "related to Plaintiff that were *for the purposes of* legal advice" is inconsistent with Mr. Walker's prior statement that Ms. Dammel "*did not[] render* legal advice." Therefore, Plaintiff concludes, Mr. Walker lied in his declaration submitted to the Court, to assert privilege over non-privileged, discoverable material.

The Court sees no inconsistency: Ms. Dammel could have conducted an investigation "for the purposes of" *the legal advice that Mr. Walker intended to give OHSU*, even if Ms. Dammel did not, herself, "render legal advice."[12] That is, in fact, the most plausible interpretation of Mr. Walker's statements. There is no basis for sanctions.

---

[11] Plaintiff states (and Defendants do not dispute) that he filed a complaint about Ms. Dammel with OSB; OSB asked for a response from Ms. Dammel; and Mr. Walker submitted the January 2022 declaration in support of Ms. Dammel's response.

[12] In Plaintiff's view, Defendants' assertion of attorney-client privilege over the communications between Mr. Walker and Ms. Dammel is unfounded because Ms. Dammel "did not[] render legal advice." For the purposes of ruling on Plaintiff's Motion for Sanctions, it is sufficient to note that Defendants' assertion of attorney-client privilege over the communications at issue, at least to the extent that Ms. Dammel conveyed information that would assist Mr. Walker in providing legal advice to OHSU, is not baseless. *See, e.g.*, *United States v. Graf*, 610 F.3d 1148, 1158-59 (9th Cir. 2010) (approvingly citing decisions in which courts concluded that communications between an outside consultant and an entity's attorneys are covered by the entity's attorney-client privilege, including where "outside consultants had information necessary to allow corporate counsel to give the corporation fully informed legal advice"); *see also Upjohn*

### 2.  Second Motion for Sanctions

In Plaintiff's Motion for Extension of Time to File a Reply to Defendants' Response to [Plaintiff's] Motion for Sanctions (ECF 26), Plaintiff raises a second request for sanctions based on a purported "perjured declaration" submitted by defense counsel Karen O'Kasey. At issue is a Certificate of Service, signed by Ms. O'Kasey, that accompanies Defendants' Response to Plaintiff's Motion for Sanctions. The Certificate of Service states that the Response was served on Plaintiff through mail to his home address or by email. It is undisputed that Plaintiff was not, in fact, served at his home address or by email, and that after Plaintiff alerted defense counsel to the error, Ms. O'Kasey agreed to an extension of time for Plaintiff to file a reply in support of his Motion for Sanctions, and served Plaintiff with a copy of Defendants' Response the following day.[13] Plaintiff seeks Rule 11 sanctions on the basis of Ms. O'Kasey's "misrepresentation to the Court" in the "false" Certificate of Service that accompanies Defendants' Response.

Ms. O'Kasey explains that the failure to serve Plaintiff was solely a clerical error. Defendants filed a declaration from Ms. O'Kasey's legal assistant, in which the legal assistant states that after filing the Defendants' Response through Court's Case Management/Electronic Case File system (CM/ECF), she inadvertently "forgot to place a copy of the Response in the mail to Plaintiff or email him, as has been [her] practice on this matter since its inception."

---

*Co. v. United States*, 449 U.S. 383, 395-98 (1981) (holding that communication between corporate employees and corporate counsel related to a corporate investigation to gather information for purposes of providing legal advice is protected by attorney-client privilege). Plaintiff confuses the work-product doctrine, which applies only to materials prepared in anticipation of litigation, with the attorney-client privilege, which has no such requirement.

[13] Plaintiff provides the Court with a copy of that Response, which contains a corrected Certificate of Service stating that Defendant was served by email on November 15th. ECF 26 at 11.

PAGE 14 – ORDER

The Court finds no basis to conclude that defense counsel's failure to serve Plaintiff was anything but inadvertent, or that defense counsel, who acted promptly to cure any prejudice to Plaintiff, has acted with anything less than good faith. Nor has Plaintiff explained how he has experienced any prejudice from the inaccuracy in the Certificate of Service that Defendants filed with the Court.[14] This is not the "the rare and exceptional case" for which the "extraordinary remedy" of Rule 11 sanctions are reserved. *See Operating Eng'rs*, 859 F.2d at 1344; *Conn*, 967 F.2d at 1421. For all the above reasons, the Court denies Plaintiff's motions for sanctions.

## C.  Order to Show Cause

Notwithstanding the Court's conclusion that the Waiver does not satisfy the OWBPA's requirements and that summary judgment must therefore be denied regarding Plaintiff's ADEA claim, Plaintiff's Complaint does not sufficiently state a claim for age discrimination. Plaintiff

---

[14] Plaintiff also seeks sanctions on the ground that defense counsel did not affirmatively offer to submit the corrected Certificate of Service that was submitted with Defendants' Response in CM/ECF (and presumably on the ground that defense counsel did not, in fact, submit a corrected Certificate of Service to the Court). Plaintiff also asserts that when defense counsel emailed Plaintiff a copy of Defendants' Response that included a corrected Certificate of Service, she "did not inform [Plaintiff] that she was sending [him] a revised copy of what she filed with the Court." The actions of which Plaintiff complains do not reveal any improper motive or any abuse of the judicial process by defense counsel. Nor has Plaintiff explained how he was prejudiced (or even *could* have been prejudiced) by receiving a Response that included a corrected Certificate of Service; by defense counsel failing affirmatively to offer to submit a corrected Certificate of Service to the Court; or by defense counsel failing to correct the Certificate of Service filed through CM/ECF. In any event, those actions (or failures to act) do not justify Rule 11 sanctions. *See, e.g.*, *Montrose Chem. Corp. of Cal. v. Am. Motorists Ins. Co.*, 117 F.3d 1128, 1136 (9th Cir. 1997) (concluding that the district court had abused its discretion in imposing sanctions because there was not sufficient evidence to conclude the conduct at issue "was the result of 'any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the costs of litigation'" (quoting Fed. R. Civ. P. 11(b)(1))); *Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986) (reversing district court's imposition of sanctions upon concluding that counsel's actions would not have meaningfully prejudiced the opposing party, and that "any technical violation of [R]ule 11 that may have occurred was *de minimis*").

asserts that OHSU discriminated against him on the basis of his age, but he does not allege any specific facts that plausibly would support a finding of age discrimination under the ADEA.

A trial court may *sua sponte* dismiss claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, even shortly before trial. *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987). The Court therefore orders Plaintiff, within two weeks of the date of this Order, to show cause in writing why his claim for age discrimination under the ADEA should not be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 336 (9th Cir. 2015) (explaining that when a court determines that a plaintiff "cannot possibly win relief," "[d]ismissal under Rule 12(b)(6) is . . . proper."

## CONCLUSION

The Court GRANTS IN PART Defendants' Motion for Summary Judgment (ECF 8), granting summary judgment against all claims except Plaintiff's ADEA claim. The Court DENIES Defendants' Motion to Strike Response to Reply in Support of Motion for Summary Judgment (ECF 20). The Court DENIES Plaintiff's Motion for Sanctions (ECF 24) and DENIES Plaintiff's motion for additional sanctions in Plaintiff's Motion for Extension of Time to File a Reply (ECF 26). Plaintiff has until January 5, 2024 to show cause in writing why the Court should not dismiss under Rule 12(b)(6) Plaintiff's age discrimination claim under the ADEA. Defendants may file a response by January 19, 2024, and Plaintiff may file a reply by February 2, 2024. Discovery and all other deadlines are stayed until the Court resolves whether Plaintiff may proceed on his ADEA claim. Because discovery is stayed and any future discovery will be limited to Plaintiff's age discrimination claim, the Court DENIES without prejudice Plaintiff's Motion to Compel (ECF 12) and DENIES AS MOOT Defendants' Motion to Strike Reply to Motion to Compel and Response to Walker Declaration (ECF  21).

**IT IS SO ORDERED**.

DATED this 12th day of December, 2023.

/s/ *Michael H. Simon*

Michael H. Simon
United States District Judge