Nabil Khlafa

5331 S Macadam Ave

Suite 258-107

Portland, OR 97239

nabilnoble77@gmail.com

971-337-8987

FILED 31 JUL '24 09:24 USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


**NABIL KHLAFA,**

          Plaintiff,

Case No. 3:23-cv-01013-SI

**PLAINTIFF'S RESPONSE TO DEFENDANTS' RESPONSE TO MOTION FOR LEAVE TO FILE SECOND AMENDMENT TO COMPLAINT.**

                    **JURY TRIAL DEMANDED**

v.

**OREGON HEALTH AND SCIENCE UNIVERSITY, DANNY JACOBS, DARRYL WALKER, CATHRYN DAMMEL, ILONA COX, SALLYDAY EISELE,**

         Defendants.

1

## INTRODUCTION

Plaintiff, Nabil Khlafa, respectfully submits this Response to Defendant's Response to Plaintiff's Motion for Leave to File Second Amendment to Complaint. As a pro se litigant, Plaintiff is still learning the procedural requirements necessary to navigate the complexities of his case against Defendants and respectfully seeks the Court's understanding and consideration of his efforts to comply with the legal process, and to adhere to procedural rules.

Plaintiff is committed to pursuing justice and holding Defendants accountable for the harm caused.

## CONCERNS REGARDING THE CONDUCT OF DEFENDANTS' COUNSEL AND MEET AND CONFER PROCESS

Plaintiff acknowledges the requirement to meet and confer before filing certain motions. Plaintiff is committed to complying with all procedural requirements moving forward and is willing to meet and confer with Defendants' counsel as necessary.

However, Plaintiff must inform the Court that Defendants' counsel had already indicated on October 5, 2023, that they would object to any further pleadings Plaintiff might file, after Plaintiff had requested a meet and confer. Defendants' counsel stated "the pleadings that you filed are not permissible under the rules, so there is nothing to confer about. If you plan on filing any further pleadings, I object to those as well." *Exhibit.1*

This position was reaffirmed on July 29, 2024, when Plaintiff attempted to meet and confer with Defendants' counsel to discuss a discovery request response from Defendants, and Plaintiff sought to address his oversight.

During this brief phone call, Defendants' counsel reiterated their intent to object to any of Plaintiff's filings and was dismissive of his efforts to correct the procedural error. Furthermore, Defendants' counsel refused to discuss Plaintiff's request for production of documentation, instead stating that Plaintiff should file a motion to compel.


Plaintiff also believes it is important to bring to the Court's attention an incident that transpired during the meet and confer session on July 29, 2024. During this session, rather than engaging in a substantive discussion regarding the issues at hand, Defendants' counsel informed Plaintiff that they intended to file a motion to dismiss unless Plaintiff agreed to dismiss his case. This interaction was brief, lasting only a few minutes, and Defendants' counsel provided no substantive details regarding the grounds for the proposed motion to dismiss. It is evident that Defendants' counsel did not confer in good faith, as required by the Local Rules, prior to their filing. Instead, in their recent action, Defendants' counsel attempted to intimidate the Plaintiff by conducting a perfunctory and inadequate meet and confer meeting. This approach undermines the fundamental principles of the meet and confer process, which is designed to facilitate genuine dialogue and resolution of disputes. Rather than fostering a meaningful exchange, Defendants' counsel has made a mockery of this essential procedure, reflecting a lack of good faith in addressing the issues at hand. This conduct not only disregards the spirit of cooperation envisioned by the meet and confer process but also exacerbates the adversarial nature of these proceedings.

As a pro se litigant, Plaintiff found this interaction to be intimidating and felt pressured to abandon his case without proper consideration of its merits. He believes that such conduct is not in the spirit of the meet and confer requirement and demonstrates an attempt to leverage his pro se status to force an unfavorable outcome.

This incident is relevant to Plaintiff's request for leave to file a second amended complaint for the following reasons:

1. It underscores the need for the Court to allow Plaintiff's amended complaint, which addresses significant issues that have emerged since his original filing.

2. It demonstrates the adversarial conduct of Defendants' counsel, which further justifies Plaintiff's request for an amendment to ensure that all relevant facts and claims are properly before the Court.

Defendants' counsel style of conferring is demeaning and disrespectful towards Plaintiff as a pro se litigant, further demonstrating a prejudiced stance that exploits procedural errors to obstruct the process rather than addressing the merits of the case. Their refusal to engage in meaningful discussion, despite Plaintiff's attempt to rectify his mistake, highlights an attempt to hinder his pursuit of justice on procedural grounds rather than substantive issues.

## JUSTIFICATION FOR A SECOND AMENDMENT TO COMPLAINT

Plaintiff contends that the proposed Second Amendment to the Complaint is not futile. This amendment is predicated on newly discovered information that is critical to the claims of legal malpractice, breach of fiduciary duty by his attorney,

and fraudulent inducement by both his attorney and OHSU's counsel, among other causes of action. This newly uncovered information will demonstrate to the Court that Plaintiff, during the coercive and unlawful process of his employment termination, was at no point aware of his rights and the protections granted to him by law. Plaintiff was exploited by two attorneys, his and OHSU's, who used their legal expertise to defraud an older worker and deny him his rights. This information includes:

   1. Plaintiff's former attorney failed to disclose a conflict of interest and/or to seek Plaintiff's consent.

   2. Plaintiff's former attorney omitted to run a conflict of interests check before or during representation.

   3. Misrepresentations and omissions by Plaintiff's former attorney impacting Plaintiff's decision-making.

## JUSTIFICATION FOR AMENDMENT BASED ON NEWLY DISCOVERED EVIDENCE AND NON-FUTILITY

I. Newly Discovered Evidence:

Plaintiff respectfully contends that the evidence supporting the Second Amended Complaint is indeed newly discovered. This evidence was not available and could not have been discovered through due diligence at the time of the original complaint. The evidence, including Plaintiff's former attorney conflict of interests, significantly impacts the claims and supports the amendments. Plaintiff has uncovered this significant evidence that was not available at the time of the original complaint. This evidence directly supports the claims and demonstrates a pattern of misconduct and unethical behavior by his former attorney. The details of

this newly discovered information have been outlined in the proposed Second
Amendment to Complaint.

## II. Amendments Would Not Be Futile

### A. Age Discrimination Under ADEA:

Plaintiff has alleged specific facts demonstrating age discrimination, including
professional condemnation by being kept in an entry-level position for over 15
years despite his professional and academic qualifications, denial of promotions,
non-consideration for any position applications at OHSU, use of constructive
discharge tactics, conditioning the settlement of Plaintiff's workers compensation
claims on his resignation, violation of the OWBPA, threats during the employment
separation process, and interference with Plaintiff's right to file a complaint with
the EEOC after termination.

Case Law:

- McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)
- Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)

### B. Violation of OWBPA:

While OWBPA may not create an independent cause of action, it is crucial in
determining the validity of waivers of ADEA claims. The non-compliance with
OWBPA renders the waiver invalid, allowing Plaintiff to pursue the ADEA claim.

Case Law:

- Oubre v. Entergy Operations, Inc., 522 U.S. 422 (1998), which reinforces the
strict procedural safeguards required for waivers of ADEA rights and protects

employees from being bound by invalid waivers, even if they have received and
retained benefits in exchange for the waiver.

C. Fraudulent Inducement:

Plaintiff has detailed the fraudulent actions, including coercion and
misinformation and false statements by his own attorney. Plaintiff had the right to
rely on these and information statements due to the fiduciary duty owed by his
attorney.

Case Law:

Nielsen v. George, 736 F.3d 1196 (9th Cir. 2013). In this case Nielsen v. George,
the Ninth Circuit addressed issues related to attorney misconduct and fraudulent
actions during the settlement process. The plaintiff alleged that his attorney had
misled him about the settlement terms and failed to disclose critical information,
which affected his decision-making process. The court acknowledged the fiduciary
duty owed by attorneys to their clients, including the duty to provide truthful and
complete information and to act in the client's best interests.

D. Breach of Fiduciary Duty:

Plaintiff's claim is against his attorney, whose breach of fiduciary duty
significantly impacted Plaintiff's decision to sign the settlement. Gruber v. Gruber,
146 Or. App. 317 (1997), could be more relevant. In this case, the Oregon Court of
Appeals dealt with issues of attorney misconduct and breach of fiduciary duty. The
case involved claims that an attorney's misrepresentations and failure to disclose
material information affected the client's decisions in a legal settlement. The court
highlighted that attorneys have a fiduciary duty to provide honest and accurate
information, and any breach of this duty that leads to detrimental reliance by the

client can result in a valid claim for damages. Smith v. Healy, 744 F. Supp. 2d 1112 (D. Or. 2010) is an Oregon federal district court case addressing issues related to fraudulent inducement and attorney misconduct in the context of employment law and settlement agreements. The key elements from the decision include:

a) Fraudulent Inducement: The case involved allegations that the plaintiff had been fraudulently induced into signing a settlement agreement. The plaintiff argued that the settlement was based on false representations made by the defendant and his attorney.

b) Attorney's Duty: The court examined the extent of the attorney's fiduciary duty and the impact of the attorney's alleged misconduct on the validity of the settlement agreement. The plaintiff claimed that the attorney's actions constituted fraud and misrepresentation, which affected their decision-making process.

c) Enforceability of Settlement: The court considered whether the settlement agreement was enforceable given the allegations of fraud. The plaintiff's ability to challenge the settlement was based on demonstrating that the agreement was procured through fraudulent means and that they had relied on these misrepresentations.

d) Legal Standards: The court applied principles of contract law and fraud to assess whether the plaintiff had sufficient grounds to invalidate the settlement agreement. This included evaluating whether the plaintiff had been misled in a manner that would affect the enforceability of the contract.

Smith v. Healy highlights the importance of honesty and full disclosure in settlement negotiations and the potential for an agreement to be challenged if it is shown that fraud or misrepresentation played a role in its formation. The case underscores the fiduciary duty of attorneys to act in their clients' best interests and the impact of attorney misconduct on the validity of settlement agreements.

E. Ineffective Assistance of Counsel:

While Plaintiff's remedy for ineffective counsel lies in a malpractice suit, the attorney's misconduct directly impacts the validity of the settlement agreement and Plaintiff's ability to waive rights knowingly and voluntarily. Oubre v. Entergy Operations, Inc., 522 U.S. 422 (1998): This case underscores that a waiver of rights under the Age Discrimination in Employment Act (ADEA) must meet specific statutory requirements to be valid. If an attorney's misconduct results in a waiver that does not comply with these requirements, the waiver can be invalidated, and the settlement agreement affected. In Cameron v. City of New York, 598 F.3d 50 (2d Cir. 2010): In this case, the court found that attorney misconduct, including misleading the client about the terms of a settlement, could invalidate the settlement agreement. The court held that the client's reliance on the attorney's statements and the breach of fiduciary duty impacted the enforceability of the settlement. In Johnson v. Ford Motor Co., 106 F.3d 626 (11th Cir. 1997): This case involved allegations that an attorney's misrepresentation and failure to disclose important information affected the plaintiff's decision to settle. The court acknowledged that such misconduct could impact the validity of the settlement agreement. Gruber v. Gruber, 146 Or. App. 317 (1997): The Oregon Court of Appeals addressed issues of attorney misconduct and breach of fiduciary duty, finding that if an attorney's actions or omissions are fraudulent or misleading, they can affect the validity of the settlement agreement.

These cases collectively illustrate that attorney misconduct compromise the validity of a settlement agreement by undermining the plaintiff's ability to waive rights knowingly and voluntarily, thereby impacting the overall enforceability of the settlement.

F. Continuous Discrimination:

The no-rehire clause constitutes a continuing violation of age discrimination laws. Plaintiff has provided specific facts showing disparate application of the clause compared to younger employees. Oubre v. Entergy Operations, Inc., 522 U.S. 442 (1998)

## MORAL AND LEGAL IMPLICATIONS

This case raises a profound legal question with significant implications: Can the OHSU's counsel and Plaintiff's former attorney deprive Plaintiff of fundamental rights, including those under the ADEA and OWBPA, and the right to make informed decisions about his employment and livelihood? Moreover, can two attorneys, ostensibly representing opposing parties, collude to violate the rights of an uninformed older worker using false representations and fraudulent inducements? Are the laws of the United States resilient against fraud and manipulative actions by unethical lawyers, or are they vulnerable to these tactics? This case presents serious legal and ethical concerns, and Plaintiff urges the Court to send a clear message to all lawyers, through this case, that the law stands firm against fraud and manipulation.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court grant the Motion for Leave to File Second Amendment to Complaint, allowing for a

comprehensive and fair examination of the claims based on newly discovered information.


Respectfully submitted,


Nabil Khlafa
Pro se Plaintiff

Dated on this 31st of July 2024

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of July, 2024, I served the foregoing

## PLAINTIFF'S RESPONSE TO DEFENDANTS' RESPONSE TO MOTION FOR LEAVE TO FILE SECOND AMENDMENT TO COMPLAINT.

on the following party at the following address:

Karen O'Kasey, kok@hartwagner.com

HART WAGNER LLP

1000 S.W. Broadway, Twentieth Floor Portland, Oregon 97205

Of Attorneys for Defendants

by e-mailing and by mailing a true and correct copy thereof, certified by me as such, placed in sealed envelopes addressed as set forth above, and deposited in the U.S. Post Office at Portland, Oregon on said day with postage prepaid.

Nabil Khlafa

Pro se Plaintiff

EXHIBIT. 1

 Gmail

## Meet & Confer

**Karen O'Kasey** <KOK@hartwagner.com>                                    Thu, Oct 5, 2023 at 7:55 AM
To: Nabil Noble <nabilnoble77@gmail.com>
Cc: Jen Stinson <js@hartwagner.com>

Mr. Khlafa—the pleadings that you filed are not permissible under the rules, so there is nothing to confer about.  If you plan on filing any further pleadings, I object to those as well.

Karen

**From:** Nabil Noble <nabilnoble77@gmail.com>
**Sent:** Wednesday, October 4, 2023 3:12 PM
**To:** Karen O'Kasey <KOK@hartwagner.com>
**Subject:** Meet & Confer

Counsel O'Kasey,

Please, accept this correspondence as my request to meet and confer before I file a response with the court regarding the declaration of Darryl Walker in support of response to motion to compel.

Please, indicate what dates and times preferences you have so we could schedule this conference.

Thank you

Nabil Khlafa