IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NABIL KHLAFA**, | Case No. 3:23-cv-1013-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **OREGON HEALTH AND SCIENCE UNIVERSITY, DANNY JACOBS, DARRYL WALKER, CATHRYN DAMMEL, ILONA COX, and SALLYDAY EISELE**, | |
| Defendants. | |

Nabil Khlafa, Plaintiff, *pro se*.

Karen M. O'Kasey, Hart Wagner, llp, 1000 SW Broadway, Suite 2000, Portland, OR 97205. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff Nabil Khlafa, representing himself, brings this case against his former employer, Oregon Health and Science University ("OHSU"), and five OHSU employees (collectively, "Defendants"). The Court previously issued an Order (ECF 31) granting partial summary judgment in favor of Defendants and permitting Plaintiff to proceed only on his claims brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*

Pending before the Court are three motions: Plaintiff's Motion for Leave to File Second Amended Complaint (ECF 44), which the Court construes as a combined motion for

reconsideration and motion for leave to amend; Defendants' Motion for Summary Judgment
(ECF 50); and Plaintiff's Motion to Compel Discovery Compliance (ECF 54). For the reasons
explained below, the Court denies Plaintiff's motion for reconsideration and denies Plaintiff's
motion for leave to amend; grants in part Defendants' motion for summary judgment; and denies
without prejudice Plaintiff's motion to compel.

## BACKGROUND

Plaintiff worked in OHSU's Health Information Management Department as a Health
Information Specialist. On November 15, 2022, Plaintiff signed a Separation Agreement (the
"Agreement"), which provided that his employment with OHSU would end the following day.
*See* ECF 51-2 ¶ 1. The Agreement includes a broad "Mutual Release of All Claims" ("Waiver"),
which provides in part that Plaintiff "release[s] . . . all claims" against OHSU, its staff, and its
attorneys, "arising up to and including the date of execution of this Agreement whether those
claims are past or present; known or unknown; suspected or unsuspected; and/or asserted or
unasserted." *Id.* ¶ 8. In consideration for signing the Agreement, Plaintiff received a settlement
payment of $200,000, of which $150,000 was payable to Plaintiff, and $50,000 to Plaintiff's
attorney. *See id.* ¶ 2.

In his original Complaint, Plaintiff asserted numerous claims under state and federal law,
including for age, race, and disability discrimination, and retaliation. *See* ECF 1-2. On
August 30, 2023, Defendants moved for summary judgment, arguing in part that the Waiver bars
all of Plaintiff's claims. *See* ECF 8. On December 12, 2023, the Court issued an Order granting
in part and denying in part Defendants' motion. *See* ECF 31. The Court concluded that as to

Plaintiff's claim[1] brought under the ADEA as modified by the Older Workers Benefit Protection Act ("OWBPA"), the Waiver does not satisfy the minimum requirements for a waiver to be "knowing and voluntary" within the meaning of the OWBPA. *Id.* at 8. The Court therefore permitted Plaintiff to proceed on his ADEA claim. *Id.* As for Plaintiff's non-ADEA claims, however, the Court found that Plaintiff could not avoid the plain terms of the Waiver and therefore could not proceed on those claims. *Id.* at 9.

On June 11, 2024, Plaintiff filed a First Amended Complaint ("FAC") (ECF 38), which is the operative complaint in this case. In the FAC, Plaintiff alleges a series of actions taken by OHSU that, according to Plaintiff, were discriminatory or retaliatory in violation of the ADEA. Among other things, Plaintiff alleges that he was excluded from a work performance meeting; that his report of discrimination was not investigated or that he was not given the results or "investigatory material" related to the investigation; that he received poor annual reviews; that he was denied promotions; and that he was coerced into resigning (*i.e.*, constructively discharged). *See* ECF 38 ¶¶ 10-33. Defendants now move for summary judgment against the FAC.

## DISCUSSION

The Court first discusses the relevant theories of recovery available under the ADEA and the requisite showings that an ADEA plaintiff must make under each theory. The Court then considers Plaintiff's motion for reconsideration and motion to amend. Because the Court denies both motions, the Court proceeds to consider Defendants' motion for summary judgment. Finally, the Court addresses Plaintiff's motion to compel.

---

[1] The Court's prior Order refers to "Plaintiff's ADEA claim" (in the singular). As explained below, however, Plaintiff asserts more than one theory of recovery under the ADEA, which the Court will refer to as distinct "claims."

**A.  Age Discrimination Under the ADEA**

The ADEA protects workers aged forty and older from employment discrimination on the basis of age. Under 29 U.S.C. § 623(a)(1), it is unlawful for an employer "to fail or refuse to hire or to discharge any [such] individual or otherwise discriminate against [the] individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Four theories of recovery available under the ADEA are relevant to the pending motions: disparate treatment, disparate impact, retaliation, and hostile work environment.

**1.  Disparate Treatment**

Plaintiff alleges a claim of "disparate treatment." "Disparate treatment" occurs when an employer "simply treats some people less favorably than others *because of* their [protected characteristic]." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) (emphasis added) (construing Title VII[2]). To prevail on an ADEA disparate-treatment claim, a plaintiff must prove "that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).[3] For purposes of a disparate-treatment claim, an adverse employment action must affect the "compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a)(1); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (construing Title VII).

Plaintiff alleges an adverse employment action of constructive discharge. A plaintiff claiming constructive discharge must show that "a reasonable person in her position would have

---

[2] Courts "construe complementary provisions of Title VII and the ADEA consistently." *Monce v. City of San Diego*, 895 F.2d 560, 561 (9th Cir. 1990).

[3] The Supreme Court has since clarified that events may have multiple but-for causes. *See Bostock v. Clayton County*, 590 U.S. 644, 656-57 (2020) (construing Title VII).

felt that she was forced to quit because of intolerable and discriminatory working conditions." *Bergene v. Salt River Project Agric. & Improvement Dist.*, 272 F.3d 1136, 1144 (9th Cir. 2001) (cleaned up). "Whether working conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question for the jury." *Wallace v. City of San Diego*, 479 F.3d 616, 626 (9th Cir. 2007). In general, however, "a single isolated instance of discrimination is insufficient as a matter of law to support a finding of constructive discharge." *Watson v. Nationwide Ins.*, 823 F.2d 360, 361 (9th Cir. 1987) (quotation marks omitted). Rather, "a plaintiff alleging constructive discharge must show some aggravating factors, such as a continuous pattern of discriminatory treatment." *Id.* (cleaned up).

### 2. Disparate Impact

Plaintiff also seeks to proceed on a claim of disparate impact but, for reasons explained below, may not do so. Disparate impact occurs when "employment practices that are facially neutral in their treatment of different groups . . . fall more harshly on one group than another and cannot be justified by business necessity." *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1049 n.1 (9th Cir. 2012). To establish a prima facie case of disparate impact under the ADEA, a plaintiff must show "(1) the occurrence of certain outwardly neutral employment practices, and (2) a significantly adverse or disproportionate impact on persons of a particular age produced by the employer's facially neutral acts or practices" *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 749 (9th Cir. 2003) (cleaned up). "Disparate impact" may also be shown on the basis of a facially *discriminatory* policy. *See, e.g.*, *Wambheim v. J.C. Penny Co.*, 642 F.2d 362, 365 (1981) (emphasis added) (construing Title VII). "A disparate impact claim must challenge a specific business practice." *Pottenger*, 329 F.3d at 749.

### 3. Retaliation

Next, Plaintiff claims retaliation. The ADEA "makes it unlawful for an employer to retaliate against an employee for opposing the employer's discriminatory practices" made unlawful "*under the ADEA*." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 763 (9th Cir. 1996) (emphasis added) (construing 29 U.S.C. § 623(d)). "To make out a prima facie case of retaliation, an employee must show that (1) he engaged in a protected activity; (2) his employer subjected him to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). A plaintiff must prove retaliation under traditional principles of but-for causation. *See* 29 U.S.C. § 623(d) (making it "unlawful for an employer to discriminate against" an employee "*because* such individual . . . has opposed any practice made unlawful by [29 U.S.C. § 623]") (emphasis added)); *Univ. of S. Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) (construing "because" in Title VII); *Gross*, 557 U.S. at 173-77 (construing "because of" in 29 U.S.C. § 623(a)).

The definition of "adverse employment action" in the context of a retaliation claim is different from the definition of "adverse employment action" in the context of a disparate-treatment claim. Whereas an adverse employment action for purposes of a disparate-treatment claim must materially affect the terms and conditions of a person's employment, an adverse action in the context of a retaliation claim need not materially affect the terms and conditions of employment so long as "a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington*, 548 U.S. at 68 (quotation marks omitted); *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173-174 (2011) (construing *Burlington*).

PAGE 6 – OPINION AND ORDER

### 4. Hostile Work Environment

Finally, Plaintiff seeks to proceed on a claim of hostile work environment but, for reasons explained further below, may not do so. A claim of hostile work environment is treated differently than a claim of disparate treatment or disparate impact. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (quoting Title VII, 42 U.S.C. § 2000[4]). To prevail on a claim of hostile work environment under the ADEA, a plaintiff must show "the existence of severe or pervasive and unwelcome verbal or physical harassment because of [the] plaintiff's membership in a protected class"—*i.e.*, for purposes of the ADEA, his age. *See Washington v. Garrett*, 10 F.3d 1421, 1431 n.14 (9th Cir. 1993) (quotation marks omitted) (construing Title VII). In addition, "[t]he working environment must both subjectively and objectively be perceived as abusive." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

## B. Plaintiff's Motion for Reconsideration and Motion to Amend

In his Motion for Leave to File Second Amended Complaint, Plaintiff asserts that he should be permitted to amend the FAC because of new facts he allegedly discovered about the actions of one of the two attorneys who represented him during the negotiation and finalization of the Agreement. In a proposed Second Amended Complaint ("SAC") that Plaintiff attaches to his motion, he alleges, among other things, that his attorney failed to inform him about a purported conflict of interest, ECF 44-1 ¶¶ 11-12; engaged in communications with OHSU counsel (and named Defendant) Darryl Walker without Plaintiff's consent or knowledge, *id.*

---

[4] At least one Ninth Circuit decision indicates that a hostile work environment claim can be stated under the ADEA. *See Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1109 (9th Cir. 1991), *superseded by statute on other grounds as recognized by Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2015).

¶¶ 14, 18; deliberately withheld critical information about legal protections afforded Plaintiff

under the OWBPA and state law *id.* ¶¶ 13, 20; bullied and coerced Plaintiff into accepting and

signing the Agreement (without reading the Agreement himself), *id.* ¶¶ 15, 16; and permitted

Defendants to include illegal clauses in the Agreement, *id.* ¶ 19. As to all of these allegations,

Plaintiff generally avers that this alleged misconduct conduct prevented Plaintiff from making an

informed, knowing, and voluntary decision to sign the Agreement. *See, e.g.*, *id.* ¶¶ 17, 21, 23.

Accordingly, Plaintiff claims fraud in the inducement and asks the Court to "reinstate the

previously dismissed discrimination claims." *Id.* ¶¶ 21-22, 25. Because Plaintiff seeks to reassert

claims dismissed by the Court's previous Order, the Court construes Plaintiff's motion as a

combined motion for reconsideration and motion to amend.

### 1. Plaintiff's Motion for Reconsideration

#### a. Standard

The Federal Rules of Civil Procedure do not explicitly discuss motions for

reconsideration. *Allen v. Nw. Permanente, P.C.*, 2012 WL 5996935, at *1 (D. Or. Nov. 30,

2012). Rule 54(b), however, provides that an order that resolves fewer than all claims "may be

revised at any time before the entry of a judgment adjudicating all the claims and all the parties'

rights and liabilities." Accordingly, the U.S. Supreme Court has noted that under Rule 54(b),

"virtually all interlocutory orders may be altered or amended before final judgment if sufficient

cause is shown." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 n.14

(1983) (dictum); *see also generally* 18B Charles Alan Wright & Arthur R. Miller, *Federal*

*Practice and Procedure* § 4478.1 (3d ed., updated June 2024) (discussing factors that influence a

trial court's decision whether to reconsider an earlier ruling).

### b. Analysis

Plaintiff's allegations about his attorney, taken as true, would not alter the Court's prior conclusion that the Waiver bars Plaintiff's non-ADEA claims. The Court has squarely considered and rejected Plaintiff's claims that he was coerced into signing the Agreement. *See* ECF 8-11. Insofar as Plaintiff alleges that his attorney otherwise acted inappropriately with respect to settlement negotiations or provided Plaintiff with poor legal advice, those allegations do not provide a basis for invalidating the Agreement. *See, e.g.*, *Petty v. Timken Corp.*, 849 F.2d 130, 133 (4th Cir. 1988) ("When a litigant voluntarily accepts an offer of settlement, either directly or indirectly through the duly authorized actions of his attorney, the integrity of the settlement cannot be attacked on the basis of inadequate representation of counsel.").[5]

In its prior Order, the Court considered and rejected Plaintiff's argument that the Agreement as a whole (or the Waiver as a whole) should be invalidated. That was so even though the Court found the Waiver invalid *as to Plaintiff's ADEA claims*. As the Court explained, the ADEA, as modified by the OWBPA, imposes particular requirements for a *waiver* to be enforceable *as to an ADEA claim*, and not all of those requirements were met in this case, such that Plaintiff could proceed on his ADEA claims. Plaintiff's allegations in the proposed SAC about the behavior of his attorney, even taken as true, do not show that Plaintiff did not knowingly and voluntarily agree to waive all *other* claims under the plain terms of the Waiver. Accordingly, the Court denies Plaintiff's request for reconsideration of its prior ruling dismissing Plaintiff's non-ADEA claims.

---

[5] Plaintiff cites several cases and summarizes their purported holdings to support his argument that "[his] attorney's misconduct directly impacts the validity of the settlement agreement." ECF 52 at 9. Several of these cited cases, however, do not appear to exist; others do exist, but Plaintiff grossly misstates the facts, analyses, and holdings of these cases. In a separate Order, the Court will address these bogus citations and case descriptions.

### 2. Plaintiff's Motion to Amend

#### a. Standard

Under Rule 15(a), courts should "freely" grant leave to amend "when justice so requires," *i.e.*, absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). "Futility alone can justify the denial of a motion for leave to amend." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). The standard for assessing whether a proposed amendment is futile is the same as the standard imposed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, *see Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), although "viewed through the lens of the requirement that courts freely give leave to amend when justice so requires," *Barber v. Select Rehab.*, *LLC*, 2019 WL 2028519, at *1 (D. Or. May 8, 2019) (quotation marks omitted).

#### b. Analysis

The question is whether, given that Plaintiff may proceed only on his ADEA claims, the Court should nonetheless permit Plaintiff to amend the FAC. Even under the liberal standard of Rule 15(a), the Court declines to do so. Plaintiff's allegations about the actions or inactions of *his attorney* do not plausibly support his ADEA claims against *Defendants*.[6] Because permitting Plaintiff to submit the proposed SAC would be futile, the Court denies Plaintiff's motion to

---

[6] Plaintiff also alleges in the proposed SAC that certain provisions in the Agreement (including a purportedly illegal no-rehire clause) and the lack of conformance with the OWPBA's requirements are evidence of discrimination, in part because, "on information and belief," OHSU's settlement agreements do not contain these provisions or these flaws "when applied to younger workers." *See* ECF 44-1 ¶¶ 32-35. The Court finds these allegations illogical, implausible, or both.

amend. Accordingly, the Court proceeds to consider whether to grant Defendants' motion for summary judgment as brought against the FAC.

## C. Defendants' Motion for Summary Judgment[7]

Defendants move for summary judgment on three grounds: (a) that Plaintiff's claims are barred on statute-of-limitations grounds because the predicate charges that Plaintiff filed with the EEOC were untimely or failed to encompass the conduct asserted in the FAC; (b) that Plaintiff has failed to identify an adverse employment action actionable under the ADEA; and (c) that the ADEA does not permit lawsuits against individual defendants.[8] For the reasons explained below, the Court grants in part Defendants' motion.

---

[7] As the Court explained in its prior Order, statements in an unverified complaint or legal briefs are not evidence properly considered on a motion for summary judgment, and statements made in a declaration that are conclusory or assert legal conclusions are insufficient to defeat a motion for summary judgment. *See* ECF 31 at 6, 10. In ruling on Defendants' motion for summary judgment, the Court therefore does not consider as evidence Plaintiff's allegations in the FAC or factual assertions made in Plaintiff's briefs where those allegations and assertions are unsupported by evidence. Nor does the Court consider Plaintiff's declarations to the extent they contain only conclusory statements or state legal conclusions.

In addition, Plaintiff submitted several unauthenticated documents not properly considered in ruling on a motion for summary judgment. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764 (9th Cir. 2002) ("We have repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment." (citing then-Rule 56(e), now Rule 56(c)(4))); *see also* Melissa Aubin, *Handbook for Self-Represented Parties, United States District Court for the District of Oregon* 32-33 (2023 ed.), *available at* https://www.ord.uscourts.gov/phocadownload/userupload/prose/Handbook%20for%20Self-Represented%20Parties.pdf (explaining how a party can authenticate evidence). As the Court explained in its prior Order, pro se plaintiffs "must comply strictly with the summary judgment rules." ECF 31 at 3 (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010)). Even if submitted in proper form, however, none of these unauthenticated documents (some of which were also submitted by Defendants) would alter the Court's ruling on Defendants' motion for summary judgment.

[8] Plaintiff asks that the Court deny Defendants motion for summary judgment on the ground that counsel for Defendants failed to make a "good faith effort . . . to resolve the dispute" pursuant to LR 7-1(a), and that counsel mischaracterized her conferral with Plaintiff. *See* ECF 66 at 26-29. The Court declines to deny Defendants' motion on this ground.

PAGE 11 – OPINION AND ORDER

### 1. Summary Judgment Standards

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

A court must liberally construe the filings of a pro se plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "[A]n ordinary *pro se* litigant," however, "like other litigants, must comply strictly with the summary judgment rules." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

### 2. Application

#### a. Exhaustion and Statute of Limitations

##### i. Applicable Law

Before a complainant commences a civil action under the ADEA, the complainant must exhaust administrative remedies by filing an administrative charge with EEOC or the relevant state fair employment practices agency. *See* 29 U.S.C. § 626(d), 633(b). The charge-filing requirement "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002) (cleaned up).

A district court has jurisdiction over (1) "any charges of discrimination that are like or reasonably related to the allegations made before the EEOC," and (2) "charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the

allegations." *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (quotation marks omitted). In making this determination, "[i]t is appropriate to consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002).

The "crucial element of a charge of discrimination is the factual statement contained therein." *Id.* at 636. The question of whether a claim has been sufficiently exhausted "must focus on the factual allegations made in the charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Id.* at 637. That inquiry will reveal the "actual focus of the administrative charge, and the scope of the claims exhausted." *Id.* Although a court must "construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading, there is a limit to such judicial tolerance when principles of notice and fair play are involved." *Id.* at 636 (cleaned up).

If the alleged unlawful practice occurred in a state with a state or local fair-employment practices agency that is authorized to enforce its state or local anti-discrimination laws, a complainant must file a charge within 300 days after the alleged unlawful practice occurred. *See* 29 U.S.C. § 626(d)(1)(B). Because Oregon's Bureau of Labor and Industries provides an avenue for relief from discrimination also covered under the ADEA, the 300-day time period applies in this case. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1075-76 (9th Cir. 2015); *Pearson v. Reynolds Sch. Dist.*, 998 F. Supp. 2d 1004, 1019 (D. Or. 2014). In addition, a claimant must file a civil action within 90 days of receiving a right-to-sue notice from the EEOC. 29 U.S.C. § 626(e).

With respect to claims involving "discrete acts" such as termination or failure to promote, "each . . . adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114. In such a case, "*only incidents that took place within the timely filing period are actionable*." *Id.* (emphasis added). When a plaintiff asserts a claim of hostile work environment, however, an extended limitations period may apply under the "continuing violations" doctrine. In such a case, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105.[9]

### ii. Plaintiff's EEOC Charges

Defendants argue that Plaintiff's claims are barred on statute-of-limitations grounds because the predicate charges that Plaintiff filed with the EEOC were untimely or failed to encompass the conduct asserted in the FAC. In support, Defendants provide two EEOC

---

[9] In *Morgan*, the Supreme Court rejected the "continuing violation" doctrine as to claims of disparate treatment and retaliation and allowed it only for claims of hostile work environment. 536 U.S. at 101. The Supreme Court did not, however, address whether the "continuing violation" doctrine applies to claims of disparate impact. *See Darensburg v. Metro. Transp. Comm'n*, 611 F. Supp. 2d 994, 1040 (N.D. Cal. 2009) ("The question of the applicability of the continuing violation doctrine to explicit pattern or practice claims is unsettled, so its extension to disparate impact claims is questionable." (construing *Morgan*)), *aff'd*, 636 F.3d 511 (9th Cir. 2011).

For several reasons further explained below, this Court need not reach that issue here. First, Plaintiff argues for an application of the "continuing violation" doctrine only to a claim of hostile work environment. *See* ECF 58 at 7. Second Plaintiff must predicate his claims on adverse actions that fall within the scope of a charge he filed with EEOC in March 2023, which does not assert "continuing violations." Third, the only claims that Plaintiff brings that are predicated on the allegations in the March 2023 charge are claims of disparate treatment and retaliation.

PAGE 14 – OPINION AND ORDER

charges.[10] Plaintiff filed the first of these charges on September 1, 2022. In that charge, in

response to a question asking "Why do you think you were discriminated against?," Plaintiff

checked boxes indicating that he believed he was discriminated against due to age and in

retaliation (among other reasons). In response to a question asking, "What happened to you that

_____

[10] The evidence shows only the two relevant charges discussed below: the September 2022 charge (numbered 551-2022-06776, and for which Plaintiff received a notice of right to sue on January 23, 2023) and the March 2023 charge (numbered 551-2023-01458, and for which Plaintiff received a notice of right to sue on April 3, 2023). That is so notwithstanding Plaintiff's allegation in the FAC that he filed a charge of discrimination with EEOC "[o]n or about January 3, 2023"—apparently referring to the *same* charge for which he received a notice of right to sue "[o]n or about April 3, 2023." *See* ECF 38 ¶¶ 35-36. Confusingly, Plaintiff also states that this same charge was submitted on a different date—December 27, 2022. *See, e.g.*, ECF 58 at 10.

In support of his assertion that that "EEOC Charge 551-2023-01458 was submitted on 12/27/2022," Plaintiff refers the Court to two documents, neither of which supports his assertion. The first document *is the March 2023 charge itself*, which shows a digital signing date of March 28, 2023, and contains the same identification number included in the right to sue dated April 3, 2023. *Id.* at 47-49. It is unclear how this document, which was also submitted (and properly authenticated) by Defendants, supports Plaintiff's assertion that he filed a charge on December 27, 2022.

The second document on which Plaintiff relies (which is not authenticated) is an EEOC *inquiry* that appears to have been filled out *by Plaintiff* and which contains the two dates that Plaintiff variously references as the dates on which the second charge was filed. *Id.* at 40-45. The *inquiry* form references January 3, 2023 as an *inquiry* date (not a date on which a *charge* was filed). *Id.* at 42. Submitting an *inquiry* with EEOC is different from filing a *charge*. *See EEOC Public Portal*, EEOC.gov, https://www.eeoc.gov/eeoc-public-portal (last visited October 24, 2024) (explaining the difference). Notably, the inquiry form, which includes the same identification number that appears on the March 2023 charge, states that *there was no claim previously filed as a charge* with EEOC. ECF 58 at 42. The form also references December 27, 2022, but as the date on which Plaintiff submitted a *complaint* with *the U.S. Department of Justice* (not a *charge* with *EEOC*). *Id.* Even if properly authenticated, this document would not create a genuine dispute as to the two relevant EEOC charges or the dates on which they were submitted.

The evidence shows that the second charge was, in fact, filed on March 28, 2023. Defendants and Plaintiff provide a copy of this charge, which includes EEOC number 551-2023-01458. *See* ECF 51-3; ECF 58 at 47. Defendants and Plaintiff also provide a copy of a notice of right to sue issued to Plaintiff on April 3, 2023, which provides notice based on dismissal of a charge with that same number. *See* ECF 58-1; ECF 58 at 67-70. Plaintiff presents no evidence of any charge other than the September 2022 and March 2023 charges.

PAGE 15 – OPINION AND ORDER

you think was discriminatory?" and asking the complainant to "describe briefly <u>each job action</u>

you think was discriminatory and when it happened (estimate)," Plaintiff stated the following:

- OHSU has systematically discriminated against me in the scope of my employment, on the basis of my race, national origin, disability
- In February 2021, OHSU threatened me with discipline
- In June 2021, OHSU secretly hired an attorney to start discipline process
- On November 11th, 2021, OHSU subjected me to a sham investigation, almost 2 hours of questioning, false imprisonment
- continuous FAILURES to HIRE: 8/20/22, 6/28/22, 6/20/22, 5/29/22
- Discriminatory evaluation 7/28/2022

ECF 51-1 at 3 (emphasis in original). In response to a question asking the "[d]ay of <u>most recent</u>

<u>job action</u> you think was discriminatory," Plaintiff answered "7/28/2022." *Id.* (emphasis in

original). On January 23, 2023, Plaintiff received a notice of right to sue from EEOC referencing

the September 2022 charge and notifying Plaintiff that he had 90 days in which file a lawsuit

based on that charge. ECF 51-5 at 1. It is undisputed that Plaintiff did not sue within that 90-day

period.

Plaintiff filed a second charge on March 28, 2023. In this charge, Plaintiff states that the

dates the alleged discrimination occurred started *at the earliest* on November 7, 2022 and ended

at the latest on December 22, 2022. ECF 51-3 at 1. In this charge, Plaintiff alleges two categories

of actions. First, Plaintiff alleges actions taken by Defendants from November 7, 2022 (the date

of a hearing with the mediator in Plaintiff's employment separation case) through November 16,

2022 (the date on which Plaintiff's employment ended, and one day after Plaintiff signed the

Agreement). *See* ECF 51-3 at 1-2. These actions involve the settlement and negotiation

process—*i.e.*, what Plaintiff refers to as a "constructive discharge." *Id.* at 3. Second, Plaintiff

alleges actions taken by OHSU during an approximately five-week period after the termination

of his employment on November 16, 2022, including a failure to provide various benefits. *Id.*

at 2-3. These post-termination actions, however, are not alleged in the FAC, so the Court does not further address them.

In the March 2023 charge, Plaintiff states his belief that he "was subjected to constructive discharge" in whole or in part because of his age. *Id.* at 3. Although Plaintiff does not assert that any of OHSU's actions identified in the charge were in response to Plaintiff's complaints of *age* discrimination, he does allege that he was "terminated" for, among other things, "speaking up against a structured culture of . . . discrimination." *Id.* at 2 (emphasis added).[11]

### iii.  Analysis

Plaintiff may predicate his claims only on adverse actions alleged in the March 2023 charge. The FAC is specifically predicated on that charge. *See* ECF 38 ¶¶ 35-36. In addition, the adverse actions alleged in the FAC to have occurred before the dates identified in the March 2023 charge are not "like or reasonably related" to the actions alleged in the March 2023 charge or "within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations" in the charge. *See Leong*, 347 F.3d at 1122. Notably, the March 2023 charge specifically identifies the *earliest* date on which the alleged discrimination took place as November 7, 2022 (the date of a hearing with the mediator in Plaintiff's employment separation case), and Plaintiff does not discuss in the charge any specific adverse actions taken before that date.

Notably, Plaintiff acknowledges that although "there are some similarities between the two cases"—*i.e.*, the two charges—"they are distinct." ECF 58 at 10. Under Plaintiff's understanding, the September 2022 charge "was not related to Plaintiff's employment

---

[11] For Plaintiff to prevail on his claim of retaliation, he must show that he opposed a practice made unlawful *under the ADEA*. Defendants have not moved for summary judgment on the ground that Plaintiff never opposed such a practice.

termination," but instead "addressed systemic employment discrimination at OHSU, the unlawful investigation of Plaintiff by OHSU's contracted attorney, . . . the continuous denial of Plaintiff's employment applications submitted [in 2022], and a discriminatory evaluation of Plaintiff on 7/28/22." *Id.* In contrast, Plaintiff explains, the March 2023 charge involved the allegations incorporated into paragraphs 32 and 33 of the FAC. *Id.* Those paragraphs reference the Agreement—specifically, the lack of a seven-day revocation period or a 21-day waiting period[12]—and state that Defendants' failures to comply with the OWBPA's requirements for a waiver to be valid "were based on Plaintiff's age/and or in retaliation for his internal complaints about such discrimination." ECF 38 at 7. Thus, insofar as Plaintiff's claims are predicated the allegations in the March 2023 charge, he asserts only claims of disparate treatment and retaliation—not a claim of disparate impact based on the "systemic employment discrimination" identified in the "distinct" September 2022 charge. *See* ECF 58 at 10.

The Court rejects Plaintiff's argument that the "continuing violation" doctrine should enable him to proceed based on events that occurred prior to the dates of events referenced in the March 2023 charge. According to Plaintiff, the "continuing violation" doctrine should apply because he alleges a claim of hostile work environment. Neither the March 2023 charge nor the FAC, however, asserts a claim of hostile work environment or allege facts that would support a claim of hostile work environment—*i.e.*, "the existence of *severe or pervasive and unwelcome verbal or physical harassment* because of [age]." *See Washington*, 10 F.3d at 1431 n.14

---

[12] As the Court explained in its prior Order, whereas § 626(f)(1)(G) expressly requires that the relevant agreement itself provide for the seven-day revocation period, § 626(f)(1)(F) requires only that the employee be "given" a period of at least 21 days to consider the agreement—not that the 21-day consideration period be incorporated into the separation agreement itself, as Plaintiff suggests.

(emphasis added) (quotation marks omitted). Nor does Plaintiff present any evidence of such facts (*e.g.*, through a declaration).

Moreover, the March 2023 charge does not assert "continuing violations." Although the March 2023 charge refers to a "structured culture of . . . discrimination," the "discriminatory conduct about which [Plaintiff] is grieving," *see Freeman*, 291 F.3d at 637, is not this alleged culture, but rather the alleged constructive discharge of Plaintiff and other acts that occurred beginning November 7, 2022—the earliest date of discrimination according to the March 2023 charge. *Cf. id.* (rejecting the plaintiff's argument that an EEOC charge would have apprised EEOC that the plaintiff was asserting a continuing violation, when the charge did not allege discriminatory acts "that suggest a pattern, or that would have been sufficient to have apprised the EEOC of all the discriminatory acts he subsequently alleged as part of a continuing violation in his First Amended Complaint" (cleaned up)).[13]

For all the above reasons, Plaintiff may proceed on his ADEA claims only to the extent that these claims are predicated on the acts that both fall within the scope of the March 2023

---

[13] Most of the discrete acts identified in the September 2022 charge are not actionable for an additional reason: An ADEA plaintiff may only sue for discrete acts that occurred within 300 days of the date on which the plaintiff filed the relevant charge. *See* 29 U.S.C. § 626(d)(1)(B). In addition, a plaintiff must sue within 90 days after receiving the notice of right to sue. *See* 29 U.S.C. § 626(e). Plaintiff did not sue within 90 days after receiving the notice of right to sue that was based on the September 2022 charge. Plaintiff provides no authority standing for the proposition that a party can circumvent an expired statute of limitations that applies to claims asserted in one charge—for which that plaintiff did not timely file suit—simply by filing a subsequent charge. Even if Plaintiff had included in the March 2023 charge all the allegations that appear in the September 2022 charge, and even if his failure to sue within 90 days of receiving the notice of right to sue that was based on the earlier charge would not foreclose a later suit based on the same allegations, Plaintiff could sue only for those discrete actions that occurred within 300 days prior to the date on which he filed the March 2023 charge—*i.e.*, actions that took place after June 1, 2022.

PAGE 19 – OPINION AND ORDER

charge *and* are alleged in the FAC—*i.e.*, claims of disparate treatment and retaliation predicated on acts alleged to have occurred between November 7, 2022 and November 16, 2022.[14]

### b. Adverse Employment Action

For Plaintiff to prevail on his claim of disparate treatment, Plaintiff must show that his age was a but-for cause of an asserted adverse action—*i.e.*, Plaintiff's purported constructive discharge. *See Gross*, 557 U.S. at 180. Similarly, for Plaintiff to prevail on his claim of retaliation, he must show that his complaints about age discrimination were a but-for cause of an adverse action that might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington*, 548 U.S. at 68 (quotation marks omitted). In other words, Plaintiff must show not only that he suffered an adverse action, but also that had it not been for his age, or his complaints about age discrimination, he would not have been subjected to that action. Defendants move for summary judgment on the asserted ground that Plaintiff has not shown that he was constructively discharged because he resigned "pursuant to a voluntary settlement agreement." ECF 50 at 8.

The Court finds that at this stage, the evidence presented raises a material factual dispute as to whether Plaintiff was constructively discharged for purposes of his disparate-treatment claim. In the March 2023 charge, signed under penalty of perjury, Plaintiff states that OHSU "explicitly" threatened (albeit through a mediator) that if Plaintiff did not resign, "[OHSU] had the intent to, and would continue to keep [him] in an entry level position for the remaining years of [his] employment, and that [OHSU] would find a way to terminate [his] employment anyway

---

[14] Plaintiff points out that evidence of acts that fall outside a limitations period may still be relevant background evidence of discrimination. ECF 58 at 7; *see also Morgan*, 536 U.S. at 113 (noting that an employee may use prior acts, which are not themselves actionable because they are time barred, "as background evidence" in support of a timely claim). For purposes of this Order, the Court does not consider to what extent Plaintiff can present background evidence of prior acts if those acts are not identified in the March 2023 charge.

if [he] didn't accept [the Agreement] and resign[]." ECF 51-3 at 2.[15] At this stage, that evidence is sufficient to raise a material factual dispute about "whether a reasonable person in [Plaintiff's] position would have felt that [he] was forced to quit because of intolerable and discriminatory working conditions." *See Bergene*, 272 F.3d at 1144 (quotation marks omitted).[16]

As for Plaintiff's claim of retaliation, he need not show an adverse employment action that materially affected the terms and conditions of his employment. Rather, he must only show that the action might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington*, 548 U.S. at 68. Under this lesser standard, the assertions in the March 2023 charge raise a material factual dispute sufficient to survive a motion for summary judgment on this issue.

Accordingly, at this stage, the Court rejects Defendants' argument that Plaintiff did not suffer an adverse action sufficient to sustain his claims of discrimination or retaliation.

### c.  Whether Plaintiff May Proceed Against Individual Defendants

Defendants move for summary judgment for the individual Defendants on the ground that individual defendants cannot be held liable under the ADEA. Defendants are correct. *See Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587-88 (1993) (holding that individual defendants cannot

---

[15] Defendants have not argued that evidence related to the mediation is inadmissible in whole or in part.

[16] The Court is not persuaded by Defendants' argument that because Plaintiff *signed the Agreement* voluntarily, he therefore could not have been constructively discharged. In support of this argument, Defendants point to the following statement in the Court's prior Order: "Plaintiff states that he signed the Agreement under duress and coercion, but he has provided no specific facts showing that he could not have availed himself of a straightforward alternative, *e.g.*, simply declining to sign the Agreement, rejecting the $200,000 settlement payment, and instead filing suit." ECF 50 at 9 (quoting ECF 31 at 11). But whether Plaintiff *signed the Agreement* under duress and coercion, such that he did not do so voluntarily, is a different question than whether Plaintiff was constructively discharged. Plaintiff could have been constructively discharged—*i.e.*, compelled to resign—while remaining free to choose among competing options.

be held not liable under the ADEA). Accordingly, the Court dismisses the individual Defendants from this case.

### d. Summary

Plaintiff may proceed on his ADEA claims only against OHSU, under theories of disparate treatment and retaliation, and only to the extent those claims are predicted in adverse actions that are both within the scope of the March 2023 EEOC charge and identified in the FAC.[17]

## D. Plaintiff's Motion to Compel

Plaintiff asks the Court to compel Defendants to produce documents pursuant to eighteen different requests for production. Defendants respond that they have produced many of the documents Plaintiff requested and otherwise state objections to production, including attorney-client privilege, overbreadth, disproportionality, and lack of relevance. Plaintiff disputes Defendants' objections and argues that the discovery he seeks is necessary to oppose Defendants' motion for summary judgment.

The Court denies without prejudice Plaintiff's motion to compel. None of the documents that may have been produced in response to Plaintiff's discovery requests would alter the Court's ruling on Defendants' motion for summary judgment. If Plaintiff later seeks to compel discovery, he may file a motion to compel that is consistent with the limited claims on which he

---

[17] In his sur-reply to Defendants' motion for summary judgment, Plaintiff asks that the Court "grant[] additional time [for Plaintiff] to secure legal representation in this matter" ECF 66 at 33. Plaintiff states that he seeks an "extension," but does not identify any deadline for which he seeks an extension. Among other things, Plaintiff notes that he is juggling an additional lawsuit (against his former attorney). To the extent that Plaintiff seeks a stay of proceedings or a deferral of a ruling, it is procedurally improper for him to do so in a sur-reply to a motion for summary judgment. In addition, the Court notes that over nineteen months have passed since EEOC issued the relevant notice of right to sue; Plaintiff does not explain why, given that he has not secured representation thus far, he might be able to secure representation in the future.

is permitted to proceed, consistent with this Order, and that seeks discovery consistent with Rule 26(b) of the Federal Rules of Civil Procedure.[18]

<h3 style="text-align:center">CONCLUSION</h3>

The Court DENIES Plaintiff's request for reconsideration of its prior ruling that Plaintiff may proceed only his ADEA claims (*see* ECF 44 ¶ 3, ECF 44-1 ¶¶ 25-26) and DENIES Plaintiff's Motion for Leave to File Second Amended Complaint (ECF 44). The Court GRANTS IN PART Defendants' Motion for Summary Judgment (ECF 50). Plaintiff may proceed only on his ADEA claims of disparate impact and retaliation, predicated on acts alleged to have occurred between November 7, 2022 and November 16, 2022, consistent with this Order. The Court DISMISSES all Defendants from this case except OHSU. The Court DENIES WITHOUT PREJUDICE Plaintiff's Motion to Compel Discovery Compliance (ECF 54).

**IT IS SO ORDERED**.

DATED this 1st day of November, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[18] In his reply, Plaintiff also asserts that "[t]he Court should sanction OHSU and its counsel for repeatedly providing false and misleading statements under oath." ECF 63 at 8. As explained in the Court's prior Order, Defendants assert attorney-client privilege over communications between OHSU's legal counsel and an outside investigator hired to investigate complaints made against Plaintiff. In seeking sanctions (then and now), Plaintiff argues that statements made in declarations submitted by OHSU's legal counsel are inconsistent in explaining the purpose for which the outside investigator was hired. For reasons explained in the prior Order, Plaintiff has not shown inconsistency in these statements or that Defendants' assertions of attorney-client privilege over these communications lack sufficient basis, such that sanctions are warranted. *See* ECF 31 at 12-13, 13 n.12. In seeking sanctions again on the same ground, Plaintiff appears to have disregarded the Court's prior analysis. *See* ECF 63 at 6-8.

In addition, a request for sanctions that is not made by separate motion is procedurally improper, *see* Fed. R. Civ. P. 11(c)(2), and the Court will not consider any future requests for sanctions unless made by separate motion.